**Eugene KASICK, et al., Appellees,**

v.

**John R. BLOCK, Secretary of Agriculture, et al., Appellants.**

**No. 83–1781.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 15, 1983.

Decided Sept. 26, 1983.

Rehearing and Rehearing En Banc
Denied Oct. 27, 1983.

J. Paul McGrath, Asst. Atty. Gen., Washington, D.C., Ronald D. Lahners, U.S. Atty., Omaha, Neb., Leonard Schaitman, Asst. Director, Neil H. Koslowe, Special Litigation Counsel, Civ. Div., Dept. of Justice, Washington, D.C., for appellants.

Russel S. Daub, Daub, Swanson & Stickman, Omaha, Neb., for appellees.

Before BRIGHT, ARNOLD and FAGG, Circuit Judges.

BRIGHT, Circuit Judge.

Kasick and other popcorn farmers brought this action challenging the Secretary of Agriculture's decision not to include popcorn in the government's 1983 "Payment-in-Kind" (PIK) program.[1] The district court held the Secretary's decision arbitrary and capricious, and ordered him to allow popcorn farmers to participate in PIK and collateral programs on substantially the same basis as do producers of "field corn."

Finding ample justification in the record for the Secretary's decision to exclude popcorn from the PIK program, we reverse the district court.

The Secretary established the PIK program as an emergency measure to reduce the oversupply of a number of the major agricultural export commodities, particularly commodities sold to certain financially-troubled foreign purchasers. Corn, wheat, and rice were among the commodities included in the program; barley and oats, two of the major feed grains, were excluded on the ground that the surplus was not large enough to justify additional attempts to reduce production of those commodities. The Secretary defined "corn," for purposes of PIK eligibility, as "field corn or sterile high-sugar corn." Popcorn, sweet corn, and corn varieties grown for decoration were excluded from eligibility.

In light of the declared aims of the PIK program, the Secretary's decision to exclude popcorn, sweet corn, and ornamental varieties was not arbitrary and capricious. These crops amount to only a tiny fraction of total corn production (typically, 200,000 acres are planted in popcorn, 80,000,000 in field corn); they do not figure significantly in the nation's agricultural exports. The popcorn surplus is a mere 1/650 the size of the field corn surplus (300 million pounds as against 196 billion pounds).

Kasick argues that it was irrational to exclude popcorn because excess popcorn is sold as feed and it would defeat the aim of reducing field corn supplies if a substitute feed corn were not also included in the acreage reduction program. But it is apparent that even if the entire popcorn surplus were sold for feed, it would scarcely affect the aggregate supply of corn available for feed purposes. The Secretary considered requests from popcorn producers that their crop be included in the PIK program—as indeed he considered similar requests from barley and oats farmers—but nonetheless decided that the aims of the program did not warrant the inclusion of those crops. We believe the Secretary had

---

1. The Agricultural Act of 1949, as amended by the Agriculture and Food Act of 1981, authorizes the Secretary of Agriculture to establish price support programs for agricultural commodities. 7 U.S.C. § 1441 *et seq.* The Secretary promulgated the rule creating the PIK program, 7 C.F.R. Part 770, in interim form on January 10, 1983, 48 Fed.Reg. 1476 (January 12, 1983), and in final form on February 28, 1983, 48 Fed.Reg. 9232 (March 4, 1983).

sufficient reason to conclude that the national interest, in light of the global economic crisis, justified government incentives for acreage reductions of field corn and certain other commodities but not of popcorn.

The popcorn farmers also challenged the inclusion in the PIK program of seed corn and white corn, which like popcorn account for only a tiny fraction of total corn production. But the Secretary demonstrates enough justification for their inclusion that we cannot call it arbitrary and capricious. The production of seed corn is directly related to the future production of field corn; reducing seed corn production advances the aim of keeping future field corn crops within acceptable limits. White corn, unlike popcorn, has always been included in federal acreage reduction programs, and the Secretary believed that suddenly withdrawing its eligibility would jeopardize the acceptability of the PIK program among farmers in those regions where white corn is grown.

Having reviewed the record, we cannot say that the Secretary's decision has so little support as to be arbitrary and capricious. Accordingly, we reverse the district court, and hold the Secretary's decision to exclude popcorn from the PIK program to be well within the ambit of his sound administrative discretion.